Daniel Kensinger on behalf of TPS, Inc., the appellant in this matter. And if I could reserve a minute and a half. That's fine. Thank you, Your Honor. Your Honor, this is a situation where the district court has misstated the issue as it was before the court. There were two separate and distinct issues. There was a cage code file which had an issue as to the amount being charged to the appellant. Could you speak up just a little bit, please? Thank you. I'm sorry, Your Honor. Is that better? It's better. Thank you. There were two separate issues. There were two separate computer files requested by the defendant. Excuse me, by the appellant. The first was what they call the cage code file. The second was what is called an H6 file, both of which are computer files, both of which were stored at a DISA facility, which is a Department of Defense facility. The cage code file was produced by the government to the appellant. It was produced in a zipped format and sent through DASCO. The government had charged the appellant, I believe, $417 for this service. That situation is moot, and I only bring it up because the government has since waived all costs on that. I bring it up because the cage code file is an example that you would use by the court. That they used a zipped file for. As a zipped file that was produced under FOIA to the appellant. The district court saw the issue as strictly one of cost. It cost $417 for the file. Was the appellant willing to pay the $417 to receive the file? With regard to the H6 file, that was not the case. The government refused to produce the H6 file in the manner that the appellant had requested. 5 U.S.C. 552A3B, in part, says that the government will grant the request in any form or format requested, if the record is readily reproducible by the agency in that format. So, Counsel, then that becomes the question, then, whether or not the district court erred in determining whether or not the material requested was readily producible in that format. Correct. All right. So, why did the court err in making that determination? The court was strictly looking at the matter of cost. The court said that it would be, asked the U.S. attorney, what is the cost for producing the H6 file? Well, the court's order does not refer to cost. It just says, it talks about being, it's not common for them to compress the files in that matter. So, why do you say the court was fixated on cost when the order does not reflect that? The order did not reflect what occurred during oral argument. The order... Well, you know, it doesn't really matter what happened, in a sense, because the question is, was the district court ultimately right or wrong? So, what happened in the argument is kind of irrelevant. The H6 file is stored on the same computer as the CAGE code file. It is stored at the same facility as the CAGE code file. The request for the file was by, the appellant was to have the item transmitted through DASCO, which is a government clearinghouse computer system that transfers files on a regular basis. DASCO required that all files be zipped. It was not a requirement of the appellant. The, excuse me, DLIS, in a normal course of business, zips all files that it sends to DASCO to be sent to whatever agency, whether it be a FOIA request or within government agencies. DASCO is a storehouse, a transmission point. It has no storage. It maintains the files for a period of no more than 60 days, and then only to ensure that they are able to retransmit in the case the file is in some way corrupted during transmission. DASCO requests that the file be zipped. It was not a request of the appellant. The appellant put it in his paper because he knew DASCO required that. The appellant had a dedicated computer line that DASCO had access to to get into his mainframe. The appellant is not connected to the Internet, so when he was requested to provide his Internet address, he didn't have one. I guess the question I have is, it's really how do we benchmark business as usual and whether if the government says it's not business as usual, we have to accept that, or whether you've created a factual issue about whether this was business as usual. Could you respond to that? The government, in both the declarations of Mr. Schneider on behalf of the appellant and Mr. Chemostrand, both of those companies receive zipped files from the Department of Defense on a regular basis. The court seemed to indicate that he thought it was on a contract basis, but it is on a request-by-request basis. There is no contract that says the government will zip a file and transfer it over to these individuals. The court did not consider either of the declarations as being evidence. Mr. Schneider's declaration indicated he specifically went to the individuals involved in the cage code file to discuss the procedure of zipping a file, transmitting the file from DLIS to DASCO. In doing so, he discovered that they do not have to get an IP address at each time. All of the steps listed in Mr. Geiger's declaration, the only thing they had to do for each and every file was DLIS would call DASCO, say, what do you want me to name the file? They would give them a unique file name for that file. They would then compress the file, name it that, and transfer it. It was normal for DLIS to send zip files to DASCO. That's the only way DASCO would accept them. So the court, in dismissing the entire scenario because it simply did not say this was specifically a FOIA request, seemed to ignore the fact that the government, as usual, in conducting business as usual, does zip files, transfer them to DASCO, and DASCO then sends them to the various agencies. The ‑‑ May we should hear from the government about their view on this. Okay. I will reserve the remainder of my time. All right. Thank you, Your Honor. Good morning, Your Honors. My name is Abraham Simmons. I am an assistant United States attorney, and I obviously represent the federal government in this matter.   I urge that this court affirm the decision of Judge Legge. I would like to get right to the heart of the matter that you asked about, Judge McKeown, but first let me just give a little bit of background about where we are in this case. The appellant in this case, TPS, is engaged in the business of collecting and distributing government information. You will find the nature of their business at tab 1 in the excerpts of record and at tab 7 on pages 1 and 2. What you will discover is that they have sent out thousands of FOIA requests to numerous different government agencies, and what is at issue in this particular case, in this particular request, is whether a certain sort of cost should be transferred from TPS over to the federal government and whether it's the FOIA that requires that that cost be borne by the federal government and not TPS. We respectfully submit that there are two documents that sets clear why it is that TPS ought to bear the cost of that conversion. The first document is the Gregor Declaration at tab 5, and the second document is a letter dated February 8, 1999. It's at tab 6 of the excerpts of record, and it is Exhibit F. It's a letter from TPS to the defendant. I'd like to address that letter in just a moment, but let's give it a little bit of context. In this case, you have a request from a particular government entity to transfer a file in a particular sort of way. What that has resulted in is a requirement that they locate the file according to the Gregor Declaration, they compress the file, that they transfer the file at least once, the transfer requiring some coordination and some approval that the file be reformatted and that it again be transferred over using that special line. Counsel, I think the question is whether or not that is done in the ordinary business of the agency. Exactly right, Your Honor, and I think that it is not. And you can find that out by looking at those two documents that I just referred to you. There are two questions that might be going on in the courtroom. How do you find that out? I mean, the reality is that we live in a digital age, and zipped files are not a big deal, to be honest. So if you've got evidence that the government actually is transferring its files in a zipped format, why isn't it business as usual? And then the question becomes cost, which is a separate question under FOIA. There are two issues there. One is whether this sort of transfer under this line can be done under FOIA. For example, Your Honor, if there was a request made for a certain PDF file made from your office, it may be true that someone in your office is good at using the PDA system, but if you are going to make a FOIA request for that PDA document, it has to go through a completely different system. Here, it may be that the DLA uses the PDA system. That really is a question that you have inserted into the statute. You say business as usual has to be FOIA business as usual. I would have to, like, insert FOIA as opposed to government business as usual. Is that your argument? To some extent, Your Honor. I think it's pretty clear from the Glass Declaration that he clearly does not go through the processes that he had to go through in order to produce any files, although we do have the Snyder Declaration. But even if you accept that, or even if you reject that test, even if you say if anyone in the federal government can zip and produce a file, and even if under FOIA that means you have to go through an additional 15 steps, that's okay. You still have to look at the additional people who are involved. And this is mostly a question about personnel. Here we have a case where the information is clearly available in two formats, and it's prepackaged so that the federal government has made it very easy for TPS to receive this information. It can receive it in magnetic form, and it can receive it in a digital form in a CD-ROM. Counsel, except that FOIA imposes an obligation to produce it in the requested form. Correct. And here is the rub. The regulations tell us that there is no obligation, of course, to create a record. There is no obligation to create something new. But this is format, not substance. So in other words, that's why if I send you a FOIA request and I want you to search through on all the names and find me all the people named Simons or something, you don't have an obligation to do that. You can hand me a parcel of documents and I can do it. But the only question here, as Judge Rollinson says, is the requester has a right to have the requested format, so long as it is in the usual approach and would not incur significant expenditure of resources. Exactly. And so that's where they make the line. The regulation recognizes that it's not always easy to tell when you're manipulating computer information whether what you're doing is creating a new document. And the test that we use is how much effort are you going through to get that new document. Counsel, why wasn't a material issue of fact raised from the Snyder and Shimmelstrand declarations? The reasons why is because of what they knew and what they were not able to attest to and what they could not dispute, Your Honor. What happened with the Snyder declaration is he could not tell us what the system was from within the federal government for, for example, having the information approved before it got from one computer system to the next. They did not comment. In fact, they added additional information about the additional personnel that were involved, that clearly were involved in trying to make sure that it was reformatted and which computer systems, which PC actually was used to zip this particular file. But, counsel, if there's an affidavit saying I've received documents in the format that's subject to the request that's pending, why wouldn't that create a material question of fact? Could you rephrase, Your Honor? If there's an affidavit in the record from a consumer, if you will, saying that I have received zipped information in the same format that's in the request that's pending, that's the subject of this motion, why doesn't that create a material issue of fact? And I think that Judge Leck dealt with that very clearly. And also, let me mention, if you look at page 13 at lines 9 through 12, you'll also see that the judge caught this one, caught the question very clearly. We're looking at page 13 of what? Of the transcript. The transcript is included in your excerpts of record of what happened at the hearing. And there was a question raised as to whether the judge understood what the real issue here was. At page 13 at lines 9 through 12, he clearly understood that what we're talking about here is how much the government has to go through. Is this the creation of a record? He completely dispelled the idea of whether it was one of cost or just cost, but how much effort are we going through? I think the judge focused on whether or not the declaration established that the information was provided under FOIA or under a separate contract. On that page, that's what it appears that the judge was focusing on. Yes.  And that is to say the same as I was trying to explain. If it is business as usual for one part of the Department of Defense but not another. If it is business as usual for one component but not another. For example, if no one in the entire FOIA responsive agency can deal with this particular conversion, then it's going to take some effort. But, you know, the judge, I mean, right before he says that, he also says I'm distressed, I have to take my time, your time, the time of everybody bickering about a matter of a few dollars. So it kind of mixes and matches. I know it seems to be a little bit at the end of his rope on this topic, okay, for whatever reason. Yes. But I'm still hard pressed to understand why there's enough evidence here to show that it's a significant expenditure on the part of the government or whether we just need somebody to weigh the facts and figure it out, not us. But if you, again, take a look at the letter in tab six at exhibit F, you can see exactly what the costs were the first time. The question isn't about costs in this appeal. I mean, I share Judge Legg's question. Why are we treating this as a federal case with a federal appeal? What's at stake for the government here? There is more at stake than it looks like. It's not just the 14th. If you require the federal government to respond to any FOIA request in this manner, there's nothing that prevents them, for example, to say, well, I'd like the documents in French. Oh, of course. English is the national language. And the federal government doesn't have the documents in French. It's not a question of format. Exactly. But if, Your Honor, it is someone in the federal government's job somewhere to convert documents into French, then why would it not be the same under this scenario? Maybe not under FOIA. That's fantastic. It's just business as usual. And the question is, is this business as usual? Exactly. And there's some evidence it is. And so then you have to have a trial if the government thinks this is worth going to trial over. Business as usual as to whom, Your Honor, and that's the key. Okay. We'll consider that. Thank you. Thank you. Thank you. May it please the Court. I only have a couple of very brief things. The Court is absolutely correct when it does not say business as usual under FOIA. It says business as usual. That is the test. And it is clear here that the government, in the normal course of a business, zips files, sends them to DASCO, who stores them for a period of time after sending them out. That's the normal course of business. Mr. Geiger indicates that in his declaration. Mr. Schneider and Mr. Chemelstrand both have received zipped files in that manner. It is the normal course of business. The FOIA was also amended. Mr. Simmons mentioned that the information was readily available in another format. Well, FOIA was amended in 1996 to allow the requester to say what method he wanted to transmit it in, not the government. So that argument really doesn't hold. The legislature made it clear that the requester should get it in the manner requested, if at all possible. And when you create a zipped file, you don't create a whole new record. All you're doing is taking the file and moving it down into a smaller format. As an example, everybody's seen a deposition that runs 300 pages, and then there's always the separate sheet that lists four individual pages on an individual page to take the 300-page document and reduces it down to 125 pages. That's all you're doing with a zipped file, is you're taking a very large file, making it smaller, but it's the same material. And as to the declarations, the district court mentioned that the information was provided under a contract. Each declaration mentions a contract. There are no contracts between Mr. Chemlestrand and the government. Well, I won't say that for a fact, but between TPS and the government. Each request is unique. As to the case code file, Mr. Schneider still continues to receive it. He receives it every quarter. He puts in a new request every quarter, and the government zips it, transmits it, and sends it to him. It is business as usual. And I would ask the court to overturn the ruling of the district court. Thank you. The case of TPS v. Department of Defense is submitted. Thank you for your arguments.
judges: Noonan, McKeown, Rawlinson